[Crim. No. 13295.   Second Dist., Div. Five.   Apr. 25, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. KENNETH EUGENE BLACKBURN, Defendant and Appellant.

Russell E. Parsons for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Walter R. Jones, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—The evidence on which defendant was found guilty of robbery was as follows:[1]

[1]Trial was to the court. Defendant was found not guilty on three counts of kidnaping and one additional robbery count.

On December 2, 1965, defendant, at gun point, forced his way into the home of John Menard who had just finished dinner with his family. The time was about 7 p.m. He demanded Mrs. Menard's jewelry. Although she was terrified, Mrs. Menard tried to lead defendant to believe that she did not have any, but eventually he discovered it in a bathroom drawer, took it and left.

The Menards' daughter, Linda, was present during the proceedings.

The matter was immediately reported to the police. Thereafter, from time to time, the Menards were shown various photographs, but failed to identify the robber. Finally, in April 1966, Mr. and Mrs. Menard were shown a group of five to seven photographs. Mr. Menard thought that one of them showed the robber. Mrs. Menard was more positive that it did. Linda was not present when the pictures were shown to her parents. About a week later the parents as well as the daughter picked defendant out of a lineup of four individuals at the Beverly Hills police station. All three made positive courtroom idenifications.

Some time after defendant's arrest, Officer McKnight talked to him at the Beverly Hills police station. He advised him of his right to an attorney, his right to remain silent and that anything he said could be used against him. He did not advise him that if he could not afford an attorney one would be provided for him, nor did he specifically advise him that he could have an attorney present at all times during the interrogation.

Defendant said that he had already called his attorney and had talked to him the night before. McKnight told defendant that he had been identified by the Menards as being the person responsible for the December 2, 1965, robbery. Defendant said that he did not mind since he was out of the country at the time. He claimed to have left Los Angeles for Brazil in the early spring of 1965; he then returned to Los Angeles for a two week period in June and then went to New York where he remained until December 15, 1965.

The defense was an alibi. In essence defendant claimed that on the evening of December 2, 1965, he had been at the home of Mr. and Mrs. Duboff. A Mr. Theodore Banks was there for the purpose of repairing an air conditioner. The alibi was supported by Mr. and Mrs. Duboff and also by Banks. Banks' recollection concerning the date was refreshed by an appointment record kept by himself and by his wife. This record,

which was never physically offered in evidence, showed a notation at 11 a.m., December 2, 1965: "Ted at Duboff, Van Nuys, A/C." Banks attempted to explain this entry as being the time when the call requesting his services was received.

■ On appeal defendant's first point is that the admission of his exculpatory statement to Officer McKnight violated the rule of *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].[2] The defects claimed are that defendant was not specifically advised that he had the right to have counsel present during the interrogation and that, while he was told of his right to remain silent, he was not told that he had an "absolute" right to remain silent.

The Attorney General more or less admits that the constitutional warning was perhaps not perfect and for the purpose of this opinion we agree. On the other hand we are persuaded that the People have carried their burden of proving that the error was harmless beyond a reasonable doubt. (*Chapman* v. *California*, 386 U.S. 18, 21-22 [17 L.Ed.2d 705, 708-709, 87 S.Ct. 824].) We are fortunate in having the trial court's reasoning before finding defendant guilty, as part of the record.[3]

It is evident that although the court discussed the evidence in some detail, the discrepancy between the statement given to Officer KcKnight and the alibi defense played no part in its reasoning.

■ Next it is claimed that defendant should have been informed of his right to have counsel present at the lineup. The lineup took place in April, 1966. The right to counsel at lineups, recognized on June 12, 1967, by *United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California*, 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], was declared to be wholly prospective as far as the

[2]The trial in the case at bar took place on November 14, 1966.

[3]". . . There is no question that all of these cases pose a certain amount of problem and that is why I think it should take a little more time than the usual one hour, but I have checked over very carefully and listened very carefully and asked questions. I don't usually do in this type of offense. I read the transcript again during the noon hour and the statements that the alleged victims are so positive so certain in their own minds as to the identity of the defendant as against which we have merely the statements of three persons, two of whom are good friends of the defendant. That wouldn't affect me except the fact that they are not too sure of the exact dates. The third man whose records I had hoped to reveal more, I had hoped that—I say that because of what he said—his testimony seems to be very clear but the records don't support what he has stated on the stand. I am convinced that the crime has been committed. . . ."

558

United States Constitution is concerned in *Stovall* v. *Denno*, 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]. This state has taken advantage of the prospective operation of *Wade* and *Gilbert*. (*People* v. *Feggans*, 67 Cal.2d 444, 448 [62 Cal. Rptr. 419, 432 P.2d 21].)[4]

▮ Next it is contended that there is no substantial evidence to support the conviction. That point is frivolous. It is quite true, of course, that defendant presented a fairly strong alibi. On the other hand, the Duboffs were his personal friends and Banks fell somewhat apart over the matter of his appointment book.

Much is made of the fact that the parents were not as positive of the identification when the photograph was shown to them as they were later at the lineup and in court. This is only a matter of weight and proves nothing, since the photograph is not part of the record.

Nor is there anything to the argument that all three members of the Menard family testified that the robber had a hairline moustache, while all the defense witnesses and defendant's landlord, called by the People, said he had no such moustache on December 2, 1965. Moustaches need not be grown. Although hairline moustaches are perhaps not the best possible disguise, events have shown that defendant is not the best possible robber.[5]

▮ The final point is that the trial court failed to determine the degree of the offense. The information with respect to the count of which defendant was convicted charged robbery in the customary language and added "That at the time of the commission of the above offense said defendant was armed with a deadly weapon, to wit, a blue steel automatic pistol." The reporter's transcript merely shows that the court said: "The defendant will be found guilty of Count III . . ." A creative minute order in the clerk's transcript recites: "Court finds the defendant 'Guilty' as charged in count 3 of the information, violation of section 211 of the Penal Code. Robbery, determined first degree. Court finds the

---

[4]The three Menards were cross-examined to a fare-thee-well with respect to the fairness of the identification procedures, both with respect to the photographs and the lineup. We have carefully studied the record and find no violation of due process. (*Stovall* v. *Denno*, 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *People* v. *Caruso*, 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Feggans*, 67 Cal.2d 444, 448 [62 Cal.Rpt. 419, 432 P.2d 21].)

[5]He admitted, on cross-examination, that shortly before the trial in the instant matter he had been convicted of robbery and kidnaping for the purpose of robbery.

defendant was armed at time of commission of offense.'' The judgment, bearing the same date as the minute order, also recites that defendant had been found guilty of first degree robbery and that he was armed.[6]

Section 1192 of the Penal Code states, in effect, that if the court fails to determine the degree of a crime, it ''shall be deemed to be of the lesser degree.'' Section 969c requires that it be specifically charged whether or not the defendant was armed and section 1158a requires a separate verdict on that question in jury cases. Section 1167 requires the judge to make the same findings as the jury, where a jury is waived. As far as the reporter's transcript shows neither section 1167 nor section 1192 was followed. We have carefully examined the several cases which deal with conflicts between the clerk's transcript and the reporter's transcript (e.g. *People* v. *Westbrook,* 62 Cal.2d 192, 201 [41 Cal.Rptr. 809, 397 P.2d 545]; *People* v. *Arguello,* 59 Cal.2d 475 [30 Cal.Rptr. 333, 381 P.2d 5]; *People* v. *Rojas,* 57 Cal.2d 676, 681 [21 Cal.Rptr. 564, 371 P.2d 300]; *People* v. *Prochnau,* 251 Cal.App.2d 22, 25 [59 Cal. Rptr. 265]; *People* v. *Valverde,* 221 Cal.App.2d 616, 619 [34 Cal.Rptr. 577]; *People* v. *Shaffer,* 182 Cal.App.2d 39, 45 [5 Cal.Rptr. 844]; *People* v. *Perkins,* 172 Cal.App.2d 781, 783 [342 P.2d 303]; *People* v. *Hymes,* 161 Cal.App.2d 668, 674 [327 P.2d 219]; *People* v. *Shannon,* 110 Cal.App.2d 153, 155 [241 P.2d 1007]; *People* v. *Washington,* 95 Cal.App.2d 454, 456 [213 P.2d 70]; *In re Evans,* 70 Cal.App.2d 213, 216 [160 P.2d 551]; *People* v. *Bier,* 59 Cal.App.2d 313, 317 [138 P.2d 738]; *People* v. *Litchman,* 17 Cal.App.2d 252, 256 [61 P.2d 1229]). We do not believe that any of them permit us to rely on the recitals in the clerk's minutes to the extent that we can import a finding of first degree robbery into the court's simple statement that defendant was ''guilty.'' The cases cited by the People (*People* v. *Cooks,* 235 Cal.App.2d 6, 14 [44 Cal.Rptr. 819]; *People* v. *Ahouse,* 162 Cal.App.2d 586, 588-589 [328 P.2d 227]; *People* v. *Flohr,* 30 Cal.App.2d 576

_____

[6]The charge that defendant was armed was not necessary to enable the court to find him guilty of first degree robbery. (*People* v. *Calloway,* 127 Cal.App.2d 504, 509-510 [274 P.2d 497]; *People* v. *Verdier,* 96 Cal.App.2d 29, 33 [214 P.2d 433]; *People* v. *Meyers,* 31 Cal.App.2d 515, 517 [88 P.2d 212].) Its purpose was to bring the defendant within the operation of sections 3024 and 12022 of the Penal Code. (Pen. Code, § 969c; cf. *People* v. *Stoddard,* 85 Cal.App.2d 130, 138 [192 P.2d 47]. Therefore it cannot be said that when the court found defendant ''guilty of Count III'' it necessarily also referred to the allegation that defendant was armed. In any event the technically correct finding that a defendant is armed, is that the charge of being armed is ''true.'' (Pen. Code, § 1158a; cf. *In re Hall,* 88 Cal.App.2d 212, 214 [263 P.2d 295].)

[86 P.2d 862]), at least involved language to the effect that the respective defendants were guilty as charged. Here the court simply said "guilty." If section 1192 of the Penal Code is to have any meaning at all, we think that these cases should represent the high-water mark of liberality. We are all the more persuaded that we should not attempt to stretch the court's language to cover the interpretation given to it by the clerk, since for reasons not apparent from the record the court was disposed to be merciful. (Cf. *People* v. *Baca,* 247 Cal. App.2d. 487, 497 [55 Cal.Rptr. 681].) No other explanation for the failure to find defendant guilty of kidnaping comes to mind.

The judgment is modified by striking therefrom the word "first" and substituting the word "second" and further by striking the words "and that defendant was armed as alleged" so that the relevant portion of the judgment shall read: "Whereas the said defendant having been duly found guilty in this court of the crime of ROBBERY (Sec. 211 PC), a felony, as charged in count 3 of the information, which the Court found to be robbery of the second degree."

As thus modified the judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.

A petition for a rehearing was denied May 17, 1968, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied June 19, 1968.