Filed 3/1/21  In re Jacob S. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Jacob S., a Person Coming Under the Juvenile Court Law. | B308452 (Los Angeles County Super. Ct. No. 19CCJP08124) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOSE V., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore.  Affirmed and remanded with directions.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, and Stephanie Jo Reagan, Principal Deputy County Counsel, for Plaintiff and Respondent.

In this unopposed appeal, appellant Jose V., biological father of Jacob S., appeals from the juvenile court's juvenile custody order after termination of dependency jurisdiction on the grounds that it failed to reflect the juvenile court's oral order that Jose V. continue monitored visits with Jacob. We agree and remand for proceedings in accordance with this opinion.

## FACTS AND PROCEDURAL HISTORY

A detailed recitation of the underlying facts is unnecessary for the determination of this appeal. We summarize the relevant factual and procedural history as follows.

Jacob S., born in 2017, is the legal child of married couple Laura S. (mother Laura) and Nery S. (mother Nery). The two mothers broke up and began living separately in 2019, with mother Laura having full custody of Jacob and mother Nery having overnight visits. In June 2019, mother Laura obtained a permanent restraining order against mother Nery for herself and Jacob.

On December 12, 2019, the juvenile court granted a request for removal warrant order by the Department of Children and Family Services (Department) to remove Jacob from the care of mother Nery. On December 20, 2019, the Department filed a dependency petition on behalf of Jacob S., identifying his parents as Laura S. and Nery S. The petition alleged that on prior occasions mother Nery was physically violent with mother Laura, that mother Nery endangered Jacob by allowing him to be around an adult companion who had violent behavior and substance and mental health issues, and that mother Nery failed to provide appropriate supervision for Jacob, including leaving him in the care of an unrelated minor who was abusing marijuana.

At the detention hearing, the juvenile court declared mother Laura to be Jacob's presumed mother, detained Jacob from mother Nery, and placed him with mother Laura. Based on mother Nery's statement of parentage questionnaire, the court found appellant to be an alleged father of Jacob.

2

DNA testing subsequently determined appellant was Jacob's biological father, and appellant filed a separate action in family court seeking shared legal and physical custody of Jacob. Appellant declared that he was unaware Jacob was his biological son until the Department's petition; mother Laura reported that mother Nery had claimed she became pregnant with Jacob through donor insemination.

On August 19, 2020, the juvenile court ordered appellant to have reasonable monitored visits with Jacob. No party objected to the court's visitation order. The Department subsequently developed a visitation schedule for appellant, with visits scheduled twice weekly, on Wednesdays from 5:30 p.m. to 7:30 p.m. and Sundays from 10:00 a.m. to noon.

On September 1, 2020, the juvenile court denied a motion by appellant to be declared Jacob's presumed father. The juvenile court found appellant had not made a sufficient showing to elevate his status beyond that of Jacob's biological father, although the issue could be addressed again "once he's established a better connection with his son." The juvenile court ordered appellant's visits to remain as previously ordered and the Department given discretion to liberalize, with no objection to visitation made by any party.

At the combined jurisdictional and disposition hearing on September 4, 2020, the juvenile court struck the allegations of domestic violence and sustained the petition, declared Jacob a dependent of the court, and ordered him removed from mother Nery and placed with mother Laura. Finding no need for further jurisdiction, the juvenile court then ordered jurisdiction terminated, with a juvenile custody order granting mother Laura sole legal and physical custody of Jacob and monitored visits for both mother Nery and appellant.

The juvenile court denied appellant's request for unmonitored visits, stating: "At this point, his visits are still going to remain monitored. He's had no relationship with this child and he needs to— he can go to family court and show a judge over there he's complied with monitored visits and has completed a parenting class to show he knows how to take care of kids and they can assess him for that limited

3

purpose." No party objected to appellant continuing his monitored visitation with Jacob. The juvenile court also clarified that mother Laura could monitor appellant's visits.

The juvenile court's minute order from September 4, 2020, states: "The mother Nery S[.] and father are allowed reasonable monitored visits as arranged in the JCO [Juvenile Custody Order]." However, there was no arrangement made for appellant's visitation in any subsequent juvenile custody order.

On September 10, 2020, the juvenile court signed three virtually identical versions of a juvenile custody order. Each of the signed JCO's expressly provides for monitored visitation of at least two visits a month for mother Nery and identifies mother Nery and mother Laura as parents bound by the order. One version differs in that it is interlineated in handwriting that also identifies appellant as a parent bound by the order and includes his mailing address (but does not identify him in the parentage section as a biological parent). There were no parties or attorneys present on September 10, 2020, and the juvenile court waived the presence of the court reporter. The record is thus silent as to which JCO was adopted or why three were filed on the same day. However, all three versions omit any mention of visitation for appellant.

This appeal followed.

## DISCUSSION

Appellant does not challenge the juvenile court's paternity finding or order denying him presumed father status. Nor does he contest the court's requirement that his visitation with Jacob be monitored. Merely, he contends the juvenile custody order(s) and minute orders are inconsistent with the court's oral visitation order and must therefore be reversed and remanded for clarification and amendment to conform to the oral order and to the juvenile court's intent.

This appeal is unopposed. At disposition, the Department neither advocated for, nor against, granting appellant visitation upon termination of dependency jurisdiction. In a letter filed with this court,

4

the Department noted that "appellant's appeal appears to be an effort to correct a clerical error," and stated that the Department took no position and would not be filing a formal respondent's brief.

Where, as here, a juvenile court terminates dependency jurisdiction, Welfare and Institutions Code section 362.4 authorizes the court to issue visitation orders. (See Welf. & Inst. Code, § 362.4, subd. (a); *In re Chantal S.* (1996) 13 Cal.4th 196, 202–203; *In re Armando L.* (2016) 1 Cal.App.5th 606, 616.) "Where a juvenile court orders visitation, the court shall specify the frequency and duration of visits. [Citation.] The time, place, and manner of visitation may be left to the legal guardians, but the guardians shall not have discretion to decide whether visitation actually occurs." (*In re Grace C.* (2010) 190 Cal.App.4th 1470, 1478; accord, *In re M.R.* (2005) 132 Cal.App.4th 269, 274; *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1313–1314.)

Here, the oral pronouncement continuing appellant's monitored visitation and the September 4 minute order stating that appellant shall have "reasonable monitored visits as arranged in the JCO" are inconsistent with the final juvenile custody order(s), which lack any specific visitation provision for appellant. "It may be said . . . as a general rule that when, as in this case, the record is in conflict it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to the greater credence [citation]. Therefore whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case." (*In re Evans* (1945) 70 Cal.App.2d 213, 216.) Such error may be corrected at any time. (*People v. Smith* (1983) 33 Cal.3d 596, 599–600.) In this case, the reporter's transcript, with its greater specificity and repeated confirmation and clarification by counsel on the record of appellant's ongoing monitored visitation, is entitled to greater credence.

We conclude that the clear oral pronouncement of the visitation order cannot be reconciled with the juvenile court's written orders, which call for reasonable monitored visits in the minute order "as set

5

forth in the JCO," but then fail to set a minimum number of visits in any juvenile custody order or provide that appellant could visit Jacob regularly. (*In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1136 [at minimum, visitation order should specify a minimum number of visits or provide for regular visitation].) The juvenile court's oral order was clear, and the parties do not dispute that appellant's monitored visits with Jacob would continue. Thus, the discrepancy about which appellant complains appears to be the result of a drafting error in which his visitation and status as biological father was omitted from the final juvenile custody order.

Given the lack of necessary detail in the juvenile custody order(s), we must remand for further proceedings at which the juvenile court shall amend the juvenile custody order to include the terms and conditions applicable to appellant's monitored visitation, including, but not limited to, a minimum number of visits or that visitation is to occur at some regular frequency and duration.

## DISPOSITION

The matter is remanded to the juvenile court for the sole purpose of clarifying and correcting its juvenile custody order consistent with this opinion.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.